UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | **No. 96-CR-355 (ARR)**<br>**No. 99-CR-29 (ARR)** |
| — against — | **Not for print or electronic publication** |
| JOHN MARIN HENOA,<br><br>*Defendant*. | **Opinion & Order** |

ROSS, United States District Judge:

Defendant John Marin Henoa has filed a motion for a sentence reduction, also known as a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

Defendant, a citizen of Colombia, was the "leading member" of Los Tuzos, a criminal organization whose "purpose" was "collecting narcotics trafficking debts, and administering retribution for the failure to pay such debts." Presentence Investigation Report ¶¶ 6–9, 136 ("PSR"). Between 1993 and 1995, Los Tuzos received compensation "for the commission of murders, kidnap[p]ings, and debt collection." *Id.* ¶ 7. Defendant himself "received murder contracts and narcotics debt collection duties . . . and was involved in a kidnapping." *Id.* ¶ 36.

On December 28, 1995, defendant was arrested for his personal involvement in numerous murders as a member of Los Tuzos. *Id.* On June 17, 1996, defendant pleaded guilty to eight counts of murder, one count of aiding and abetting murder, and one count of conspiracy to murder in Case No. 96-CR-355. *Id.* ¶¶ 1, 40–51, 59–111. On November 22, 2000, defendant pleaded guilty to

three counts of conspiracy to murder and one count of use of a firearm during a crime of violence in Case No. 99-CR-29. *Id.* ¶¶ 2, 52–57, 112–13. On March 14, 2001, defendant was sentenced to separate, concurrent terms of 420 months in each case, followed by 5 years of supervised release in Case No. 96-CR-355, Judgment, ECF No. 10, and 3 years of supervised release in Case No. 99-CR-29, Judgment, ECF No. 6.[1]

On January 14, 2021, defendant filed the instant motion for compassionate release in Case No. 99-CR-29. Def.'s Mot., ECF No. 11-1.[2] The government filed its opposition on February 8, 2021, Gov't Opp'n, ECF No. 18, and defendant filed a reply on February 15, 2021, Def.'s Reply, ECF No. 19.

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A); *see United States v. Cato*, No. 16-CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (noting a defendant bears the

---

[1] The parties have filed the same motion papers in both cases; throughout this opinion, except where specified, I cite to the motion papers filed in Case No. 96-CR-355.

[2] On January 21, 2021, defendant filed the equivalent motion in Case No. 96-CR-355. Def.'s Mot., ECF No. 15-1.

burden of proof). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Cato*, 2020 WL 5709177, at *3 (citation and quotation marks omitted).

Accordingly, in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 237–38 (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) does not bind a district court, but it does provide some guidance. *See id.* at 236. Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios. First, "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A)(i) (2018) ("U.S.S.G."). Second, "[a] defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." *Id.* cmt. 1(A)(ii). In any scenario, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . . .
(5) any pertinent [Sentencing Commission] policy statement . . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The § 3142(g) factors largely duplicate those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)–(4).

## DISCUSSION

### I.   Administrative Exhaustion

In his initial motion papers, defendant does not mention § 3582(c)'s exhaustion requirement or provide any indication that he attempted to exhaust. On reply, however, and in response to the government's contention that defendant has not exhausted his administrative remedies, Gov't's Opp'n 13–17, defendant provides an undated and unsigned letter request for release that he allegedly "submitted . . . to the staff at FCI Oakdale II in September of 2020," Def.'s

Reply 2; Def.'s Administrative Request, ECF No. 19-1. Defendant does not specify the date on which the request was made, nor does he submit evidence that the warden received or responded to the request. The government states that "there is no indication that defendant filed a compassionate release request with the warden." Gov't's Opp'n 15. Defendant asserts that "his counselor refused to provide a stamped copy or otherwise provide confirmation of receipt" of his request letter, and he suggests that perhaps "prison staff then threw the request away, or it was somehow lost in transit to the Warden." Def.'s Reply 2. Because I conclude that defendant's motion nevertheless fails on the merits, however, I need not decide whether he has provided sufficient proof that he exhausted his administrative remedies. *See, e.g.*, *United States v. Reiter*, No. 87-CR-132 (VSB), 2020 WL 4252681, at *3 (S.D.N.Y. July 23, 2020) (finding that the defendant had not exhausted his administrative remedies because he did not "(1) provide a copy of his request to BOP, (2) state the date on which he made the request to BOP, (3) provide evidence that the Warden received such a request, or (4) provide a copy of the Warden's response"); *United States v. Bolino*, No. 06-CR-0806 (BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020) (finding the same where defendant "attached no documents or proof . . . , such as the warden's denial, proof of an appeal, or the BOP's final agency action").

## II.     Extraordinary and Compelling Reasons

Defendant has not shown that any extraordinary and compelling reasons warrant his release. Defendant argues only that I should find that "the COVID-19 pandemic . . . on its own . . . rise[s] to the level of 'extraordinary and compelling.'" Def.'s Reply 7. Defendant does not advance any specific arguments or assertions regarding the COVID-19 situation at his current BOP facility.[3] Nor does he allege that he suffers from any medical condition that places him at increased

---

[3] As of February 22, 2021, BOP reports that 22 inmates and 14 staff are currently infected with

risk from COVID-19.[4] Further, at forty-six years old, defendant is relatively young, and he is certainly not in an age bracket that would place him at greatest risk from COVID-19. *Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Feb. 19, 2021).

I recognize that COVID-19 continues to pose a real risk to this country's imprisoned population, even despite the measures that the government asserts that BOP is taking to combat the spread of the disease. *See* Gov't's Opp'n 8–12. However, absent evidence that the COVID-19 pandemic poses a heightened risk to defendant in particular, rather than to the imprisoned population in general, I cannot conclude that his risk constitutes extraordinary and compelling reasons warranting his release. *See, e.g.*, *United States v. Washington*, No. 14-CR-215 (LJV), 2020 WL 1969301, at *4 (W.D.N.Y. Apr. 24, 2020) (finding no extraordinary and compelling reasons for release when the defendant submitted no medical evidence showing that COVID-19 posed an increased risk to him, despite the presence of COVID-19 at defendant's facility); *United States v. D'Acunto*, No. 18-CR-14 (VM), 2020 WL 1904007, at *2 (S.D.N.Y. Apr. 16, 2020) (finding no extraordinary and compelling reasons for release when the defendant did not argue that COVID-

---

COVID-19 at FCI Oakdale II. *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus (last updated Feb. 22, 2021). Since the pandemic began, 1 inmate has died, and 212 inmates and 6 staff have recovered after testing positive. *Id.* FCI Oakdale II currently houses 732 total inmates. *FCI Oakdale II*, BOP, https://www.bop.gov/locations/institutions/oad (last visited Feb. 22, 2021).

[4] According to his administrative request, defendant suffers from "chronic, untreated severe gastritis." Def.'s Administrative Request. But this condition is not currently identified as a risk factor for serious illness or death from COVID-19, *see, e.g.*, *People with Certain Medical Conditions*, BOP, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 22, 2021), and defendant has not argued or pointed to any evidence to the contrary. Defendant does not refer to gastritis in his motion papers.

19 would exacerbate his underlying kidney disease or otherwise pose a heightened risk to him); *United States v. Pinto-Thomaz*, 454 F. Supp. 3d 327, 329–30 (S.D.N.Y. 2020) (recognizing that concerns about the spread of COVID-19 in a crowded prison were justified but finding no extraordinary and compelling reasons when the defendants were "no different from a host of other prisoners" and absent evidence of widespread transmission in the defendants' facilities).

Accordingly, defendant has not satisfied the "extraordinary and compelling reasons" element of his compassionate release motion, and I deny it on that basis.

### III.    Section 3553(a) Factors

Even assuming that defendant demonstrated that extraordinary and compelling reasons were present in this case, the § 3553(a) factors militate against his release. In particular, the nature and circumstances of defendant's many offenses are of the utmost seriousness. *See* 18 U.S.C. § 3553(a)(1). Defendant was a "leading member" of a criminal organization that engaged in "murders, kidnap[p]ings, and [narcotics] debt collection." PSR ¶¶ 7, 9, 36. Defendant was a "hitman" who committed a "terrible series of crimes," including multiple murders. Def.'s Reply 7; PSR ¶ 36. The fact that defendant "has obtained his GED [and] taken a wide range of classes" while incarcerated, Def.'s Mot. 15, does not materially impact my view of his history and characteristics. *See* 18 U.S.C. § 3553(a)(1). Further, the violence of these offenses and the significant harm that they caused weigh against a reduction in defendant's sentence, which would not adequately reflect the seriousness of defendant's offenses, deter similar criminal conduct, or protect the public. *See* 18 U.S.C. § 3553(a)(2).

Thus, application of the § 3553(a) factors reveals that a reduction in defendant's sentence would not be justified, and I would deny defendant's motion on this basis as well.[5]

---

[5] Because I conclude that multiple § 3553(a) factors militate against release, I need not address

## CONCLUSION

For all of the foregoing reasons, defendant's motion for compassionate release is denied.

SO ORDERED.

Dated: February 22, 2021
       Brooklyn, NY

                                     _____/s/_____
                                     Allyne R. Ross
                                     United States District Judge

---

defendant's contention that, because defendant would be deported to his home country "at the conclusion of the term of his incarceration, whenever that may be," the "crucial question" under § 3553(a)(2)(c) "is not protection to the American public at large, but that of the people of Colombia." Def.'s Mot. 14–15.